Margaret E. Sisson, Administratrix, Appellant, v. Union Mutual Life Insurance Company, Appellee.

### Gen. No. 16,903.

INSURANCE—*extended insurance.* Where a policy of life insurance provides that it is entitled to the benefits of the Maine Non-Forfeiture Law, under which a policy, after being in force three years, is continued in force notwithstanding failure to pay premiums, by applying a certain portion of the net value of the policy as a net single premium of temporary insurance, and such policy contains in a margin a tabulated statement entitled "Insurance

under this policy secured for," wherein the respective numbers of years and days appearing opposite to different numbers in a column entitled "Annual premiums paid in cash before lapse," according to the testimony of actuaries include the entire period of insurance indemnity in each case under such law, even if such tabulated statement be assumed to be a part of the policy, the word "secured," according to its natural significance, is to be construed as indicating the duration of the entire periods of insurance, including the years for which premiums were paid, and not the periods for which such insurance is extended.

SMITH, P. J., dissenting.

Appeal from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding. Heard in this court at the October term, 1910. Affirmed. Opinion filed March 4, 1913.

O'BRYAN & MARSHALL, for appellant.

FRANK L. WEAN and HENRY W. WALES, for appellee.

MR. JUSTICE BROWN delivered the opinion of the court.

This appeal is from a judgment of the Superior Court of *nil capiat* and for costs against the plaintiff and appellant, Margaret E. Sisson, administratrix of the estate of one George D. Sisson, deceased, and in favor of the defendant and appellee, The Union Mutual Life Insurance Company.

The cause was tried before the court without a jury, and the issues found for the defendant. Propositions of law were submitted to the court before this finding both by the plaintiff and the defendant. Some of these were held and some refused. Among those refused was the first one offered on behalf of the plaintiff. It completely sets up the theory of the plaintiff on which she claims to recover, and recites the evidence which, as she claims, sustains her case. Its transcription here, therefore, will serve, with some additions to be hereafter noted, as a statement of the case, the claims of the plaintiff therein and the action of the court. It is as follows:

"The Court holds that if the evidence shows that a policy of life insurance was issued by the Union Mutual Life Insurance Company of Portland, Maine, defendant herein, for $15,000 on the life of George D. Sisson and dated May 15, 1889, and numbered by the said company 91109, and was held by the said George D. Sisson, conditioned payable in the event of his death to his executors, administrators or assigns, and if the evidence further shows that in said policy of insurance it was provided as follows:

"9. That after the payment of three full years' premiums in cash this policy is entitled to the benefits of the Maine Non-Forfeiture Law, and if this policy shall become entitled to extension under said law, the present value of any reversionary additions standing to its credit shall be used to further extend the original amount of this policy.'

"And if as a part of the policy at the time it was issued there was written upon the face of the policy a table as follows:

## MAINE NON-FORFEITURE LAW.

| Annual Prem's Paid in cash before lapse. | Insurance under this Policy secured for | | Cash due at end of Endowment if insured lives. |
|---|---|---|---|
| | Years | Days. | |
| 3 | 5 | 288 | |
| 4 | 7 | 174 | |
| 5 | 9 | 19 | |
| 6 | 10 | 213 | |

"And if the evidence further shows that the said George D. Sisson died on or about the 10th day of August, 1899, and that proofs of death of the death of the said George D. Sisson was furnished to the Union Mutual Life Insurance Company in accordance with the conditions of said policy and that (4) annual premiums had been paid the said defendant in cash from the date of said policy and that the premium

due upon the policy on the 15th day of May, 1893, was paid by the said George D. Sisson by promissory note dated May 15, 1893, which note is in words and figures as follows, to-wit:

'$713.40/100     (Grand Rapids Nat'l Bank,
                                  Coll.          May 15, 1893.
                 Grand Rapids, Mich.)

For value received by a loan on Policy No. 91109 issued by the Union Mutual Life Insurance Company, Four months after date I promise to pay to the order of said Company Seven Hundred thirteen and 40/100 Dollars at Grand Rapids Nat'l Bank, Grand Rapids, with interest at six per cent. per annum.

This note is given on account of said policy and unless the principal and interest are paid when they severally become due, said policy then lapses as for non-payment of premium when due.

No. 4313.   Due Sept. 15/18, 1893.

                                      Geo. D. Sisson.'

(Written across the face of this note is the following):
                          'Time for payment of the within
                          note is hereby extended to May
                          1st, 1894, with interest at six per
                          cent. per annum from May 15,
                          1893.'

(Also written across the face of said note is the following):
                               'Cancelled under terms of
                                     Me. N. F. Law.'

(Endorsed on Back):   'Collect and Credit Account
                          Union Mutual Life Insurance Co.,
                                   John E. DeWitt,
                                          President.


                          Collect and Credit Account
                          Union Mutual Life Insurance Co.,
                                  Fred E. Richards,
                                          President.'

"And if the evidence further shows that at the time said note was issued by said George D. Sisson and delivered to the Union Mutual Life Insurance Company, defendant herein, a receipt was given to the said George D. Sisson for said note, which said receipt is in words and figures as follows, to-wit:

'Union Mutual Life Insurance Company,
Portland, Maine.
John E. DeWitt, President.

Received from the owner of Policy No. 91109 by promissory note $713.40, being the annual cash premium on said policy due on the 15 day of May, 1893, but if said note is not paid at maturity, the policy then lapses as for non-payment of premium when due.

Arthur L. Bates,

Secretary.'

And if the evidence shows satisfactory proofs of death of the said George D. Sisson was furnished the Company, *then the Court holds that the policy was continued in full force and effect for seven years and one hundred and seventy four days from May 15, 1893, and was in full force and effect at the time of the death of the said George D. Sisson on or about August 10, 1899.''*

It is not contended by the appellee herein that any part of the hypothetical case which is made the basis of the proposed holding of law is not a correct statement of that which the evidence actually showed in the case at bar, except the supposition or implication that the table described and set out was ''a part of the policy at the time it was issued.''

The court did not hold the said table or tabulated statement a part of the policy, but as a proposition of law (tendered by the defendant—No. 7) held:

''As a matter of law, that the tabulated statement contained in the margin of the Policy of Insurance No. 91109, which said policy is in evidence in this case, is no part of the said policy of insurance nor is said tabulated statement a part of the contract between the defendant and the assured.''

We assume, however, that the court below meant, as its refusal of the proposition would strictly imply, to negative the liability of the defendant even on the assumption that the table in question was to be considered a part of the policy as well as on the assumption that it was no part of the policy.

We have at all events considered the liability of the defendant on both said assumptions and reached the conclusion that it exists in neither case.

The additions to be made to the hypothetical case set forth in the refused proposition above given are these:

The policy was introduced in evidence by the plaintiff. It contains the following provisions:

"8.   Surplus will be apportioned to this policy only at the expiration of five years from its anniversary date and annually thereafter, and then only if the policy is in full force by the payment of premiums. Such apportionment will be made in the form of reversionary additions, but the value of the same may at the option of the insured be applied to the reduction of the sixth and subsequent premiums.   When thus applied the receipt of the insured shall be a valid release to the Company.   But if this policy becomes a claim within five years from its date and it is in full force by the payment of premiums, the Company will pay a mortuary dividend equal to fifty per cent. of the amount of premiums previously paid herein.

"9.   That after the payment of three full years' premiums in cash this policy is entitled to the benefits of the Maine Non-Forfeiture Law, and if this policy shall become entitled to extension under said law, the present value of any reversionary additions standing to its credit shall be used to further extend the original amount of the policy.

"10.   At the end of every period of five years (the first commencing on the anniversay date of this policy) if this policy is then in full force by the payment of premiums, the owner upon surrender thereof at the Home office of the Company within sixty days thereafter, shall be entitled to receive the value thereof as he may elect as follows:

"(1)   In cash, (2) in a life indemnity, or (3) in a paid up, non-participating policy on the same plan; the value of the policy in each case shall be the same as is applied in extension of a policy under the Maine Non-Forfeiture Law."

The table or tabulated statement, a portion of which appears in the first proposition of law offered by the plaintiff as before set forth, is not alluded to or described in the policy, but is appended thereto following the signatures of the president and secretary, as the copy of said policy appears in the transcript of the record. In the propositions of law before given, presented by the plaintiff, it is alluded to as "written upon the face of the policy." In the proposition of law presented by the defendant and held by the court, as before given, it is described as "contained in the margin of the Policy."

The table is only partially given in the proposition of law before set forth. It is extended to show the "Insurance secured" by the payments of "annual premiums" up to 30, and the last five items of the table are as follows:

## MAINE NON-FORFEITURE LAW.

| Annual Prem's Paid in cash before lapse. | Insurance under this Policy secured for | | Cash due at end of Endowment if insured lives. |
|---|---|---|---|
| | Years | Days. | |
| 26 | 33 | 183 | |
| 27 | 34 | 212 | |
| 28 | 35 | 0 | $2,046.75 |
| 29 | 35 | 0 | 5,057.70 |
| 30 | 35 | 0 | 7,602.60 |

The defendant introduced in evidence the "Maine Non-Forfeiture Law," the essential parts of which for consideration here are:

"Every life insurance policy   *   *   *   which may be forfeited for non-payment of premiums including

all notes given for premiums or loans   *   *   *   after
it has been in force three full years   *   *   *   is
nevertheless continued in force   *   *   *   for a period
to be determined as follows, to-wit:   The net value of
the policy when the premium becomes due and is not
paid shall be ascertained according to the combined
experience or actuaries table of mortality, with inter-
est at the rate of four per cent. a year; from such
net value there shall be deducted the present value of
the differences between the future premiums named
in the policy and the future net premiums on said
policy ascertained according to the rates of mortality
and interest aforesaid, in no event, however, to exceed
one-fourth of said net value.   *   *   *   What remains
after deducting any indebtedness to the Company on
account of the policy or notes held by the Company
against the insured, which notes shall be cancelled,
shall be considered as a net single premium of tem-
porary insurance, and the term for which it will in-
sure shall be determined according to the age of the
party at the time of the lapse of the policy and the
assumptions of mortality and interest aforesaid * * *
If the death of the insured occurs within the term of
temporary insurance covered by the value of the
policy as determined in the preceding section, and if
no condition of the insurance other than the payment
of premiums has been violated by the insured, the
Company shall pay the amount of the policy as if
there had been no lapse of the premium, anything in
the policy to the contrary notwithstanding.''

The defendant introduced evidence also that the
note set forth above as given in the payment of pre-
mium due on May 15, 1893, was never paid, but be-
came due according to an extension of its terms on
May 1, 1894, and it being then returned to the Com-
pany unpaid, minutes were made on the Company's
books to that effect, and that the policy had gone un-
der the Maine Non-Forfeiture Law, the insurance
being thereby extended to January 4, 1896; that on
January 4, 1896, the policy was marked off by the
Company as void, the extended insurance under it as

having expired, and that subsequent to the 15th day of May, 1893, no premium was ever paid or note given to the Company on the account of said policy.

It then placed on the stand one Joseph H. Nitchie, a life insurance actuary by occupation, but not connected with the defendant Company, who testified that he had experience in computing extended insurance under the terms of life insurance policies under non-forfeiture statutes; that he was familiar with the Maine non-forfeiture law; that assuming that the policy involved in this case lapsed on May 1, 1894, for non-payment of premiums, four annual premiums in cash and one by note having been paid, the insurance would be extended under the Maine law until January 4, 1896; that assuming it lapsed on May 15, 1893, after four cash payments, the extended insurance would have lasted to November 5, 1896; that assuming that five payments were made in cash on the policy and that the policy lapsed as of May 15, 1894, the policy would expire in June, 1898.

The defendant then introduced the testimony of Samuel S. Boyden, an actuary in its employ, who testified that he also had experience in computing extended insurance under the Maine Non-Forfeiture Law; that assuming that the policy in question lapsed on May 1, 1894, the policy would under that law expire on January 4, 1896; that assuming that it lapsed on May 15, 1893, the policy would expire on November 5, 1896; that assuming that five payments were made in cash and disregarding the question of surplus on the policy, the policy was lapsed after the payment on the 15th day of May, 1894, after the payment of the 5th premium in cash—the period of extended insurance to the assured would expire June 3, 1898.

Mr. Boyden further testified that it was noted on the books of the Company that the "surplus" on the policy in question, assuming that five payments had been made in cash, would at the end of five years have

been $52.06, and that using that sum to further extend the policy, it would expire on August 2, 1898.

This date of August 2, 1898, is the latest date mentioned by either actuary as the time when under any of the assumptions made the policy would finally expire.

On the whole case as made, the Court refused to hold "that under the law and the evidence in the cause judgment should be for the plaintiff," and did hold "that under the law and the evidence in the cause the judgment should be for the defendant." It was right in so holding. If the "table" appended to the policy is no part of the contract between the defendant and assured, as the court held, there is obviously no evidence tending to show that the policy was in force at the time of the death of George D. Sisson on August 10, 1899. The evidence of the actuaries to the contrary is clear.

The claim of the plaintiff, however, is that the table in question is a part of the policy and of the contract of insurance and the testimony of the actuaries incompetent to change it. But if this were assumed it would not, in our opinion, change the proper disposition of this case. The question would then be—What is meant by the words "insurance under this policy secured for?" Do they mean that the terms respectively indicated below them show the length or duration of the entire periods of insurance indemnity secured by the payment of the number of premiums set opposite each term, or do they mean that these various terms are not the periods of insurance *"secured"* but the periods for which such periods of insurance are *"extended"* beyond the terms for which the premiums ostensibly and *prima facie* pay? We think to ask the question is to answer it. "Secured" means, according to the dictionaries, "assured", "insured", "made secure", "certainly acquired", "unexposed to danger", "made safe", "made certain", "guar-

anteed", "obtained", "gained". It seems to us the natural word to employ to signify that on the payment of four annual payments for example, 7 years and 174 days of insurance instead of the four years for which those four payments would be *prima facie* compensation would be (because of the non-forfeiture law) "obtained", "gained", "guaranteed", "assured" or "made safe"—but a very inapt word to use to indicate that the four years insurance indemnity period *prima facie* paid for by the four annual payments was "extended", "lengthened", "added to" or "enlarged" by the term for which insurance was thus said to be "secured". Giving this natural meaning to the words and phrasing of the tabulated statement, it does not, even if it be considered a part of the contract by any possible construction, carry the expiration of the policy beyond June 3, 1898, a year and two months before the death of the assured.

Therefore, whether the table in question be or be not considered as a part of the contract of insurance in this case, it is our opinion that the judgment of the Superior Court is correct, and it is accordingly affirmed.

*Affirmed.*

MR. PRESIDING JUSTICE SMITH dissents.